The next matter on our calendar is John Regas and Timothy Regas versus the United States of America. We'll hear from the appellant, Mr. Marshall. Yes, good morning, your honor. May it please the court. My name is Lawrence Marshall here on behalf of John and Timothy Regas, the petitioner's appellants. The two issues I would like to discuss today lie at the core of the district court's in light of the definitive clarification in United States versus Mahaffey and second, the meaning of the concept of reliance on counsel. So beginning with essential facts, the view of the court about that question drove, of course, not only law of the case, but also drove the merits, if you will, of what the Brady duties would have been assuming materially exculpatory material. The district court's decision ignored the very significant intervening decision of this court in United States versus Mahaffey and let me say why. In Mahaffey, as here, an individual had given exculpatory information to the government. In Mahaffey, as here, the defendant knew the identity of that individual who gave the statement, knew the subject matter that that individual might have exculpatory evidence, but did not know about the statement itself and the government did not disclose the statement as here. And as here, without that information, the defendant didn't call the witness and, of course, realistically couldn't call the witness without having any idea whether that would explode in front of the jury. Counsel, this is Judge Clark. I am sympathetic to your position on this, but I must say I have problem with the last question and that is of materiality. Yes, it is true that this goes to some counts and as to those counts, it could have made a difference and it is true that the whole the jury was just given general instructions, but wasn't the evidence for on the other counts sufficiently overwhelming so that a conviction was almost certain to have occurred and that is it's not the usual test that we apply. So, that's my problem with your case. I'm willing to buy the first two parts, perhaps, but I have problem with the third. Yes, Your Honor. If we knew that the jury had made a finding on a particular historical fact, then looking at the evidence that supported that and deciding that we can take away certain evidence and the jury's finding of historical fact remains intact, that would be valid, but we have no idea what the jury relied upon and the court is not, with all respect, allowed to speculate that, well, maybe the jury would have reached a different verdict based on other grounds. This jury was told by the judge, you need only find one sort of scheme, if you will, one sort of example of this fraud in order to convict. Now, imagine a juror sitting at home and reading that the court has said, well, the golf course allegation was tainted, but there were so much other things that we're going to affirm and that juror, hypothetically, of course, says, wait a minute, we all thought that other ground wasn't sufficient or we never reached it whatsoever. There was no jury verdict there to be able to sustain, unlike the classic case where there's a murder and we know what the jury found and we're only asking what evidence is there, what evidence is there to support it. Now, with regard to, and by the way, Your Honor, that result follows from the Ninth Circuit's which is, of course, not binding, but also follows from the Supreme Court's decision in Yates, in Stromberg's California, in Griffin versus United States, which are, of course, binding. And all of those cases say that if one doesn't know what ground the jury went on, we can't speculate. That is certainly true, unless we are sufficiently clear that there was so much evidence that the jury would have done. And, you know, this isn't the simple sufficiency. It's a question of whether the Brady material is material. And on that, the test of what our judgment is of whether there would have been a conviction gives us much more room than in the ordinary case. Or am I wrong? No, I understand, of course, Your Honor. And the question is, where is that line? And I submit that the proper line is at this idea of whether or not this was a count, not a count formally, but whether this was a theory, whether this was a grounds, whether this was a means that independently could have supported the verdict. Because otherwise, you're actually taking away from the defendant his right to a jury verdict, because the whole verdict may well have been tainted by this Brady error. In addition, Your Honor, let me remind the court that in many of these instances, the Brady error that's out there does taint across the entire spectrum, that he does go to the credibility of certain witnesses. Take Jim Brown, a dubious witness to begin with. If his credibility had been destroyed, as it should have been, as it could for example, that would have carried over to virtually every other issue in the case. So the taint is not limited to a particular theory. It bleeds over the entire case. So the defendants themselves could have called the marketing witnesses, couldn't they? Your Honor, they certainly could have. Lawyers can always call any witness subject. That's what I don't understand how they could blame the government for not giving the notes when they had access to the same witnesses. Actually, Your Honor, those witnesses refused to speak to the defense, completely refused to speak to the defense. So the only thing that the court had, the defendants had the possibility of doing was taking a huge gamble. You know, we know what they should say. But of course, would that it were the case that every time we know what someone should say, it's what they would say. And that's the distinction that Mahaffey draws. This isn't my distinction. This is Mahaffey saying they might have known the identity of the witness. They might have known the subject matter, but that doesn't matter if they didn't know about the statement, which is what enabled them to call that witness. It's what enabled them to use to advantage the information that witness had. And that's just a reality of practice that the court can't shut its eyes to. This is Judge Park, but this is an advice of counsel defense where this comes up. And they uniquely know whether they relied on the advice of counsel. It's not like whether they know whether somebody saw the same thing that they think they saw. It's whether they relied on the advice of outside counsel. So it seems like that is something that they would have essential facts about. Well, Your Honor, again, they know to some level. And again, as we can talk about with respect to advice of counsel, this wasn't a situation where they actually were communicating with the lawyer directly. This was happening through various people at Adelphia. But the point is, yes, they knew. But calling Mr. Rothenberger could have destroyed that because he may well have no other way to put it. He may have lied. People lie, especially when they're themselves under investigation. And to prove that, Your Honor, let me tell you what the prosecutor said in his closing to the jury. If, in fact, these men really believed that any of the lawyers or auditors approved or supported what went on, don't you think they would have called one of them as a witness in trial? Why didn't you hear from any of them? I know the answer. The record knows the answer. They couldn't call because they didn't know. And if, in fact, the disclosure happened, and the question has to be asked. And again, I'm not asking the court to make brand new policy. I'm asking the court to recognize the power of Mahaffey, which said our precedents, our precedents require more. In Mahaffey, the government argued, just as it argues here, that all we needed to do was to give, to make sure they knew the subject matter and the individual. It's exactly what they argued here before. It's what they argue here now. Mahaffey couldn't be less unequivocal. Thank you, counsel. Back to the law of the case. I'm sorry, could I just ask one question? What would you have us do with our 2009 decision on direct appeal? Is your argument that implicitly overruled that? It didn't overrule it, per se, your honor. It clarified the law in ways that rendered it subject to revisitation under the law of the case doctrine. And I'll remind the court, and I'm not claiming that this court didn't rule back then, but the court ruled in one sentence. The court said we detect no error. It wasn't something that was the subject of analysis. It certainly didn't know about the new evidence that sheds light on some of the government's representations in this case. So under both the new law clarification, under the new facts, and I submit, given the government's representations here under the manifest injustice exception, or part of the law of the case rule, this is just one result. Thank you, counsel. You still have reserved three minutes for rebuttal, which I will allow you to retain. We'll hear from the government. Good morning, and may it please the court. My name is Alex Rossmiller, and I'm an assistant United States attorney in the Southern District of New York. I represent the government in this appeal. Did you try the case below, counsel? I did not, your honor. I was in college when the case was tried below, and so I'm here representing my colleagues. That's a good thank you, your honor. The defendant's habeas petition was dismissed by Judge Wood, and that dismissal should be affirmed for three independent reasons. The first, your honors, is the mandate rule. The question is here whether Judge Wood properly applied that rule, and the court should affirm the district's proper application of the mandate rule. As the district court correctly concluded, Judge Sand and this court have already ruled that the government had no Brady obligation to disclose the notes at issue, and the law forecloses re-litigation. But that was both before McCarthy and was on the basis of information that was quite different. So the mandate rule is a very easy rule. We can look at it or not. In fact, all sorts of great, great, great Judge Sand, and there's no one who knew the law more than he did, but all that stuff that the government now turns out to have done wasn't before him. Yes, your honors. The notes in particular were not before him, but it is extremely useful to look at Mahaffey, and petitioners are simply incorrect in their interpretation of Mahaffey, which relies upon and repeats the essential facts doctrine. Well, that's another, that's a second question. That's not a question of the mandate rule. The question of whether the essential doctrine, essential facts doctrine, has been met or not is a second thing. And whether McCarthy goes as far as opposing counsel goes, which I rather doubt, but goes part way, is another issue. And there, for me, the key question is, was this a situation where, as a practical matter, these people could not bring, even though they knew perfectly well what they had said, or claimed they know, that he had advised of counsel, that in that situation, without knowing what Ruffenberg told other people, to call Ruffenberg on the stand would be disastrous. Because Ruffenberg, according to what they thought, would be lying. And the only way they could impeach him is with this information that the government had, and they didn't have. So why is that in any possible way fair? So, your honor, the reason why it is fair is because the defendants here did, in fact, have the essential facts to be able to call these witnesses and get at the information that they, as Judge Park noted, uniquely knew. They uniquely knew what advice they had received. They call Ruffenberg, and Ruffenberg says, I gave advice on the trivial matter, which is what the government misleadingly told them, and I didn't give advice on anything else. And they're dead. And they're dead because they do not have the information that you had, that he gave, that whether that's really advice or not is another matter, but that goes to the merits of the thing. Your honor, I think the petitioners here are asking the court to make new policy and new law on this issue. It is an extraordinary stretch to say that despite believing a potential witness had significant useful information at a trial, because that witness might lie. Is there anything in the old cases, and in McCarthy, as interpreted by McCarthy, that would bar us from doing just that, from saying that the essential facts doctrine does not bar, does not make something not Brady material, when but for that Brady material, it was essentially impossible or suicidal for the defendants to bring that evidence in. Now, you know, as I said to opposing counsel, I still have problems with his case on the question of the total amount of evidence, but this is not what you're arguing yet. Yes, your honor, if I understand your honor's question, the answer is the court can look to the merits of the arguments. Yes, of course, the mandate rule is discretionary, and the court can look to the merits as Judge Wood did in Madison, but the defendants there failed not only based on the law of the case doctrine, but in fact, based on the merits on the essential facts doctrine, which was not altered or even clarified, but rather simply repeated in the happy and also on the substance of the statements themselves. To say that the notes would potentially impeach a witness who is not only speculative, and only limits the damage of testimony, it does not reflect affirmative evidence in the defense's favor to say that if the defendant called a witness who then lied, then they could impeach there, there's a sort of a bootstrapping argument to this. I have another just question. Do you concede that the government behaved very badly in this case? Your honor, I don't know that I would say that the government behaved very badly. What I will say is that in the long period of time since this case, the policies and practices both of this office and of the Department of Justice in general have changed substantially. And in fact, there are directives in the current justice manual that I think would have likely encouraged or compelled prosecutors to turn over these notes at a time. I'm glad to hear that. Yes, your honor, and that certainly is increasingly the practice of the office, particularly in recent years with respect to non-testifying 3500 material in particular. Here, this simply isn't a case where justice cries out for a reversal of the conviction. It's not a situation where... And why is that counsel? Because of the other evidence in the case? That's right. I'm sorry, your honor, I didn't mean it Is that why the justice doesn't cry out in this case? Because of the mountain of evidence on the other side? That's exactly right, your honor. And as Judge Wood noticed, Coring does not suggest otherwise. Judge Wood said that the Reguses mistakenly argue that because the jury's verdict form asked whether they committed fraud with respect to various transactions but didn't specify particular misrepresentation or omissions in that specific language, that evidence as to any of the theories would be material. Judge Wood says that that standard of Brady is directly in contrary to this circuit's entire record standard. But the advice of counsel defense was central to the defense theory of the case, wasn't it? It was significant to the defense theory of the case, but these notes do not meaningfully move the needle on that defense. And I would encourage the court to, as I imagine it has, but to take a close look at the notes themselves. They are not a model of clarity, I think is the best way to describe them. And they certainly do not give rise to the extensive inferences and suppositions that petitioners argue that the notes show here. They simply do not show what petitioners claim and argue that they are limited. They are in many instances vague. And what petitioners want to say is you can infer or imagine what someone might have said. And if he lied, we would have impeached based on this. It is really a stretch to say that. And the evidence in the case was overwhelming. Petitioners say if these witnesses were so good for the government, the government would have long trial. But the evidence was absolutely overwhelming, including as to all of the particulars that are described, as to all of the schemes that were described. There was not a need to pile on with these additional witnesses on these points. And they certainly didn't make exculpatory points in the notes that are at issue here. Thank you. Thank you. Mr. Marshall, you have reserved three minutes for rebuttal. Thank you, Your Honor. It's really quite astonishing to hear my learned colleague say that the notes are not unambiguously, unambiguously exculpatory in many ways. And that includes the idea that Mr. Rothenberger drafted and approved the co-borrowing language, that he absolutely approved net reporting, that he absolutely was involved in the affiliate borrowing language, all of that. But let me give one example, if I may, just to get a sense of what was happening here. There was an allegation with regard to the golf course. And I bring it up because it was important. And Judge Wood said it was a particularly egregious example that the prosecution offered as such. And what happened there is the allegation was that Tim Regas was committing fraud, criminal fraud, because he did not go to the board and tell them that a golf course was being built on land partially owned by John Regas. That was the allegation. Very simple for the jury to understand. Golf course, land, no disclosure. Here's what the Rothenberger interview said absolutely unambiguously. He said, Tim Regas came to me, the lawyer for the board, and his lawyer, he came to me and he asked me, do I need to go to the board about this? Is it an affiliated party transaction? And I, Rothenberger said, told him, no, you don't at this point. Maybe down the road, because we don't know what the land is going to end up doing. It may be given to the city, whatever. He said, you don't have to do it. Now, how can the government have looked at that? I just asked how, and then stood up, not at this podium, but at the podium where you are, and said, there is absolutely no exculpatory evidence beyond the timber rights, full stop. I just don't understand how that could have been said. In terms of this issue that Judge Calabresi raised and the government raised in terms of the effect that one area will have on other areas, I did my best to explain that in terms of, and I pointed to Caring and Yates and Mr. Ross Miller says, well, Judge Wood said that Caring doesn't say that. And I plead with the court, as I'm sure it's done already, to read Caring. It's exactly what Caring says. And when it comes to sort of not really confronting precedent, the government says that I'm asking you to make new policy and new law. Your Honor, I'm asking you to follow Mahaffey. Mahaffey could be clearer. And Mahaffey provides, without a doubt, if you took the facts of this case and overlaid them over Mahaffey, I don't believe there could be any serious doubt that comes out differently. That's the kind of clarification of law that justifies reconsideration. And the mandate rule applies vertically. That tells lower courts they have to follow you. Once you're set in Hernandez, the district court may not change our mind for ourselves, but we may do so. And that's the difference between a mandate rule and a law of the case. Thank you, counsel. Thank you both. Very good argument. We'll reserve decision.